J-S22019-19

2019 PA Super 199

| IN RE: Q.R.D., A MINOR | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.J.D., NATURAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 150 MDA 2019 |

Appeal from the Decree Entered January 15, 2019
In the Court of Common Pleas of Schuylkill County Orphans' Court at
No(s):  A63-245A-17

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

OPINION BY DUBOW, J.:                                          **FILED JUNE 25, 2019**

Appellant, N.J.D. ("Father"), appeals from the January 15, 2019 Decree

that terminated Father's parental rights to Q.R.D. ("Child").   After careful

review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

This Court has previously summarized the factual and procedural history

as follows:

> Child was born in August of 2013 to K.D. ("Mother") and Father.
> Mother and Father were unmarried at the time of Child's birth and
> lived together until approximately December of 2013, when they
> separated.   The parties subsequently entered into a custody
> agreement in the Carbon County Court of Common Pleas in April
> of 2014.  The custody order provided Mother with primary custody
> of Child and partial custody to Father.  When Mother subsequently
> refused to follow the custody order, Father filed a petition for
> contempt with the Carbon County Court of Common Pleas, and
> Mother was found to be in contempt.
>
> A second custody order was entered in June of 2014, which
> continued to give Mother primary custody and Father partial
> custody.  In July of 2015, while Child was in Father's custody,

_____

*   Retired Senior Judge assigned to the Superior Court.

Child suffered burn marks.  The matter was referred to Children and Youth Services, but it was determined there was no need for services.  Thereafter, Mother would not allow Father to have custody of Child outside of Mother's home.  Although Father had successfully filed a contempt action against Mother in May of 2014, he chose not to seek another contempt finding.  From July of 2015 until May of 2016, Father's visits with Child were sporadic.  Father saw Child on May 5, 2016, the day Father exited rehabilitation services [for treatment of depression and drug use], during a chance encounter at a local supermarket and later that day.

There was also evidence provided that Father attempted to see Child on Child's birthday in August of 2016.  Father testified that Mother agreed to allow Father to see Child on that date and Father waited at Mother's home until Child and Mother returned.  Mother, however, testified that Father advised her that he was going to Mother's house on that date, and she told him they were not home but that he could wait until Mother and Child returned home.  While waiting, Father stated that Mother's Father, A.H. ("Maternal Grandfather"), who lives with Mother, Child, and B.M.D. ("Stepfather"), started an argument with him, so he left before seeing Child.  Father left birthday presents for Child.  Father maintains that he attempted to contact Mother and Maternal Grandfather after August of 2016 in an effort to see Child.  Father stated that his calls to Mother would "not go through," and he speculated that Mother blocked his number or changed her number [despite the fact that Mother presented evidence showing that her phone number had not changed since 2014].  Father contends that neither Mother nor Maternal Grandfather returned his messages.

In November or December of 2016, Father maintains that he advised Maternal Grandfather that he planned to move to Philadelphia, where he had accepted a job.  Father asserts that neither Mother nor Maternal Grandfather responded.  Father remained in Philadelphia until September of 2017, when he moved back to Schuylkill County because Mother and Stepfather had begun the process to terminate Father's parental rights to Child.  Father acknowledged that he had not seen Child since May 5, 2016.  Despite Mother's efforts to keep Child from Father, Father has not filed any proceedings against Mother since the contempt action in 2014.

*In re Q.R.D.*, No. 1060 MDA 2018, unpublished memorandum at 1-2 (Pa. Super. filed December 24, 2018).

On November 21, 2017, Stepfather filed a Petition to Involuntarily Terminate Father's Parental Rights.[1]  The trial court appointed Constance A. Calabrese, Esq. to represent Child.  On June 8, 2018, after a hearing, the trial court issued an Opinion and Final Decree that granted Stepfather's Petition, terminated Father's parental rights, and awarded full legal and physical custody to Mother and Stepfather.

After the termination hearing, Attorney Calabrese notified the trial court that she was retiring.  The trial court appointed Shelby G. Hostetter, Esq., to represent Child in further proceedings.

Father timely appealed.  On appeal, this Court addressed *sua sponte* whether the representation of Child by Attorney Calabrese satisfied the requirements of 23 Pa.C.S. § 2313(a), which provides, *inter alia*, that "[t]he court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents."[2]  This Court determined that the record was devoid of evidence

---

[1] Pursuant to 23 Pa.C.S. § 2512(a)(3), a petition to terminate parental rights with respect to a child under the age of eighteen years may be filed by "[t]he individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt)."

[2] *See In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018) (holding this Court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority).

regarding Child's preference regarding the involuntary termination proceeding and, consequently, we found "no basis upon which to conclude that Attorney Calabrese effectively represented Child's legal interests in this matter." *In re Q.R.D.*, *supra*, at 9. This Court vacated the Decree without prejudice and remanded the case to permit the trial court to determine whether a conflict existed between Child's best interests and legal interests, if ascertainable. *Id.*

On January 14, 2019, upon remand, the trial court held a hearing to determine whether Child's legal interests were ascertainable at the time of trial. The trial court heard evidence from newly-appointed Attorney Hostetter, who met with Child on January 7, 2019. Based on testimony from Attorney Hostetter, the trial court made the following findings: "It was [Attorney Hostetter's] impression that [Child], who is now five years old, was quite immature for his age. He showed no recognition of [Father]'s name and no memory related to [Father] other than [Stepfather]. It was Attorney Hostetter's opinion that [Child] had no understanding of the litigation and was unable to express a preference for its outcome." Opinion After Remand, filed 1/15/09, at 1. On January 15, 2019, the trial court issued an Order that concluded: "[Child]'s legal interests were unascertainable at the time of trial, and [] Attorney Calabrese properly represented the best interest of [Child] at trial," and terminated Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (b). Order, 1/15/19.

Father timely appealed. Father and the trial court complied with Pa.R.A.P. 1925.

- 4 -

**ISSUES RAISED ON APPEAL**

Father raises the following issues on appeal:

A. Whether Attorney [] Calabrese, as the court[-]appointed counsel for [Child], failed to ascertain whether [Child]'s legal interests were satisfied as part of her representation of [Child] prior to the termination hearing?

B. Whether the trial court abused its discretion in determining that [Stepfather] produced clear and convincing evidence that [Father's] conduct satisfied at least one of the nine statutory grounds delineated in Section 2511(a) of the Pennsylvania Adoption Act, codified at 23 Pa.C.S. § 2101[,*et. seq.*]?

C. Whether the trial court abused its discretion in addressing the second part of the bifurcated process by determining that the best interests of [Child] warrant the parental rights of [Father] to be terminated, in accordance with 23 Pa.C.S. [§ 2511(b)]?

Father's Br. at 6 (reordered for ease of disposition; some capitalization omitted).

**LEGAL ANALYSIS**

When we review a trial court's decision to terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). We may not reverse merely because the record could support a different result. *In re*

***T.S.M.***, 71 A.3d at 267. We give great deference to the trial courts "that often have first-hand observations of the parties spanning multiple hearings." ***Id.*** Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." ***In re Adoption of A.C.***, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." ***Id.*** (citation omitted). Provided that the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in "the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007).

**Child's Legal Interests Are Unassertainable**

In his first issue, Father avers that Attorney Calabrese, Child's attorney during the contested termination hearing, failed to ascertain Child's preferred outcome prior to the hearing, and, therefore, failed to represent Child's legal interests during the hearing. Father's Br. at 27. Father acknowledges that when newly-appointed Attorney Hofstetter interviewed Child in January 2019, after this Court remanded the case, Child was unable to express a preferred outcome. *Id.* at 28. Father argues, however, "it is possible that [Child] may have remembered [Father] and been able to express a preference prior to the initial trial nine months earlier." *Id.* As the record supports the trial court's findings, Father is not entitled to relief on this issue.

As stated above, Section 2313(a) mandates that counsel be appointed to "represent the child" in contested termination of parental rights proceedings. 23 Pa.C.S. § 2313(a). For purposes of Section 2313, a child's legal interests are synonymous with the child's preference. *In re T.S.*, 192 A.3d 1080, 1089 (Pa. 2018). Our Supreme Court has recently held that that, "during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests" *Id.* at 1092. Importantly, "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests[.]" *Id.* In this situation, "the mandate of Section 2313(a) of the Adoption Act that counsel be appointed "to represent the child," 23 Pa.C.S. §

2313(a), is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings." ***Id.***

Our review of the record reveals that the trial court did not abuse its discretion when it concluded that Child's legal interests were unascertainable at the time of the trial. The trial court found Attorney Hostetter's testimony to be credible that Child was immature, did not understand the legal proceedings, did not remember who Father was, and did not have a preferred outcome. The record supports the trial court's findings. We decline to reweigh the evidence or interfere with the trial court's credibility determinations.

Because Child's preferred outcome was not ascertainable at the time of the hearing, there was no conflict between Child's legal interests and his best interests. ***See id.*** Accordingly, the trial court's appointment of Attorney Calabrese, who represented Child's best interests at the hearing, satisfied Section 2313(a)'s mandate that trial court appoint counsel "to represent the child[.]" ***See*** 23 Pa.C.S. § 2313; ***In re T.S.***, 192 A.3d at 1092. Thus, Father is not entitled to relief on this issue.

**Termination Pursuant to 23 Pa.C.S. § 2511(a)(1)**

In his second issue, Father asserts that Stepfather failed to present clear and convincing evidence that Father's rights should be terminated pursuant to Section 2511(a)(1). Father's Br. at 16. Father concedes that he did not have contact with Child during the six months immediately preceding the filing of the Petition, but argues that the trial court failed to consider Father's

explanations as to why he did not have contact with Child. *Id.* at 17. We find no abuse of discretion.

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that "the parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). The focus of involuntary termination proceedings is on the conduct of the parent and whether that conduct justifies a termination of parental rights. *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa. Super. 2001). Although the statute focuses on an analysis of the six months immediately preceding the filing of the petition, "the court must consider the whole history of a given case and not mechanically apply the six-month statutory provision." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted). Rather, "[t]he court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination." *Id.* (citations omitted).

This Court has repeatedly defined "parental duties" in general as the affirmative obligation to provide consistently for the physical and emotional needs of a child:

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty . . . requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (citations and internal paragraph breaks omitted).

Moreover, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *Id.* (citation omitted). "A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship." *Id.* (citation omitted). And most importantly, "[p]arental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted).

Our review of the record supports the trial court's determination that, because Father has refused or failed to perform parental duties for more than six months prior to the filing of the petition in order to preserve the parent-

child relationship, Stepfather met his burden under 23 Pa.C.S. § 2511(a)(1).

At the time of the hearing, Father had not seen Child in approximately 2 years,

or half of Child's life. The trial court acknowledged that Mother sometimes

prevented Father from visiting with Father, but concluded that Father's efforts

to maintain a parent-child relationship in spite of those obstacles fell short.

The trial court opined:

> We find Father's testimony credible that [Mother] sometimes acted in a manner to block his efforts to maintain a relationship with [Child]. However, [Father] is required to take an active an affirmative role in [pursuing] and maintaining that relationship. We find that he did not assert himself sufficiently to try to overcome those obstacles . . . Instead he allowed almost two years to pass without seeing [Child].
>
> [Father] asserted that there were periods of time when he could not telephone [Child] because he had deliberately smashed his phone while fighting with an ex-girlfriend. He recalled trying to call at least "four times." [Father] admitted that he made no attempt to call after August 2016. He asserted that when he had tried calling, he could not get through or it would not ring. He said it was a "hassle" trying to arrange to see [Child], and he did not want to "bring drama" to [Child]. [Father] reported that while he was working in Philadelphia, he would travel to Schuylkill County almost every other weekend to see another child, but he made no attempt to arrange a visit with [Child] on any of those occasions.
>
> [Father]'s testimony about his efforts to maintain a relationship with [Child] falls short of establishing that he took an active role in pursuing his responsibilities as a parent to his child despite the limitations of some obstacles placed before him. He seems to deflect the blame on others as the reasons that he has failed to parent his child. He testified that the school would not give him any information; he was not told the physician's name; others tried to contact [Mother] on his behalf but she would not communicate with them; [Maternal Grandfather] did not like him and prevented him from seeing [Child]; his telephone calls would not go through; he did not have an address to send a letter; and [Mother] never asked him for financial support. The evidence

- 11 -

shows that [Father] has been either unwilling or has refused to take on a parental role, and it is unlikely that any amount of time will remedy that. There is evidence that [Mother] was less than cooperative in enabling [Father] to schedule a visit, but he made no reasonable efforts to overcome her lack of cooperation or to maintain contact with his son. He made no attempt to contact her by mail or even threaten to go back to court. There were no cards and no more presents for [Child], who has been waiting for more than three years for [Father] to act like a parent.

Trial Ct. Op., filed 6/8/18, at 6-7. Our review of the records supports the trial court's findings.

While Father argues that the trial court failed to consider his explanations as to why he was not in contact with Child, our review of the record belies this claim. The trial court considered all of Father's explanations and found them to fall short of Father's affirmative obligation to perform his "parental duties" and provide consistently for the physical and emotional needs of Child.

In light of the evidence, the trial court properly concluded that Father failed to perform his parental duties for more than six months preceding the filing of the Petition. Accordingly, the trial court did not abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1).

**Termination Pursuant to Section 2511(b)**

In his last issue, Father contends that the trial court abused its discretion when it determined that it was in Child's best interest to terminate Father's parental rights pursuant to Section 2511(b). Father's Br. at 22. We disagree.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). This Court has emphasized that although a parent's emotional bond with her child is a "major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child." *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citation omitted). Finally, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d at 762–63.

The trial court opined:

[Child] has been in the care of [Mother] for his entire life and has resided with [Stepfather] for approximately three years of his four and a half years of life. [Stepfather] has taken on the role of parent and has provided for [Child]'s physical, emotional, and spiritual needs. [Child] has some developmental needs which are being addressed, but he is healthy overall and doing well in preschool. [Child] most likely would not even recognize [Father], given his young age when he last saw him. [Father] may think

- 13 -

that he has developed a bond with [Child] due to his relationship immediately after he was born, but he has not acted in the past three years to maintain that bond. We conclude that there is no evidence showing that [Child]'s needs and welfare are better served by continuing [Father]'s parental rights. Instead, the termination of the parental rights of [Father] is in the best interest, needs, and welfare of [Child].

Trial Ct. Op. at 8. Our review the record supports the trial court's findings.

Father argues that the record does not support the trial court's conclusion that Child would probably not recognize Father. Father's Br. at 24. In making this assertion, Father relies on his own testimony that when Child saw Father the day that Father left rehab in May 2016, Child recognized him and jumped into his arms. *Id.* Father's argument is unpersuasive. The evidence showed, and Father admitted, that at the time of the hearing, Father had not seen Child in over two years. Accordingly, the record supports the trial court's inference that Child would probably not recognize Father.

The record supports the trial court's findings and, therefore, the trial court did not abuse its discretion when it determined that it was in Child's best interest to terminate Father's parental rights pursuant to Section 2511(b).

## **CONCLUSION**

In sum, the record supports the trial court's findings that Child's preferred outcome was unascertainable at the time of the hearing. Accordingly, there was no conflict between Child's best interests and legal interests and, therefore, the representation of Child by Attorney Calabrese satisfied the requirements of 23 Pa.C.S. § 2313(a). In addition, our review of the record reveals that Stepfather provided clear and convincing evidence to

support the termination of Father's parental rights pursuant to 23 Pa.C.S. §§ 2511(a)(1) and (b).

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/25/2019